UNITED STATES of America, Appellee,

v.

Hugh Trent BLAND, Appellant.

No. 82–1804.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 12, 1982.

Decided Jan. 7, 1983.

Mark A. Helfers, Leritz & Reinert, P.C., St. Louis, Mo., for appellant.

Thomas E. Dittmeier, U.S. Atty., Evelyn M. Baker, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before LAY, Chief Judge, and McMILLI-AN and JOHN R. GIBSON, Circuit Judges.

LAY, Chief Judge.

Hugh Trent Bland appeals his convictions in the United States District Court for the Eastern District of Missouri, the Honorable Clyde S. Cahill presiding. Bland was found guilty under 18 U.S.C. § 1202(a)(1) (1976) (Appendix) as a felon possessing a sawed-off shotgun and under 26 U.S.C. §§ 5861(d),

5871 (1976) for failure to register the shotgun. He challenges: (1) his ten-year sentence as being excessive; (2) the quashing of a subpoena issued by the defense during trial; (3) the rereading of several instructions to the jury; (4) the admission into evidence of a copy of an invoice from the Ithaca Gun Company's records; and (5) the alleged prejudicial questioning and statements by the trial judge.

█ We need not address each issue, since we agree that defendant was prejudiced by the trial court's questioning which prevented Bland from being given a fair trial; we reverse and remand for a new trial.

*Facts.*

The record shows that the government's witness, Officer David Ury, testified that while on patrol, he and his partner approached an intersection and saw a man with what appeared to be a sawed-off shotgun. Officer Ury told his partner to stop the squad car and left the vehicle in pursuit of the individual with the gun. As Ury approached, he saw the man begin to run, and then throw the gun into a yard. Officer Ury ordered the man to stop. The man complied and was arrested; he gave his name as Dwight Bland, although he was actually Hugh Bland. The shotgun was retrieved from where it was thrown.

Officer Busso, Ury's partner, essentially corroborated Ury's story except for the fact that Busso did not see the gun being thrown. Three other witnesses testified for the government. One testified that he had inspected the weapon and found it operable; another witness testified that the gun was manufactured in New York and shipped to St. Louis; the final witness testified that the gun was not registered to Bland.

Bland testified that a man named "Jerry" carrying a sawed-off shotgun was running in front of him and threw the gun during the chase by the police officers. William Blakely and his brother, Lamont, testified that they saw an unidentified person running ahead of the defendant Bland. Bland's sister testified that Bland did not appear to have a weapon when she dropped him off earlier in the evening.

The trial was short; the testimony consumed only one day. The judge questioned many of the witnesses on his own. The alleged prejudicial questioning may be summarized as follows:

(1) The trial judge first intervened by examining the witness Stubits, a firearms identification police officer, who was testifying about fingerprinting firearms. On recross-examination by defense counsel, Stubits conceded it cost very little to do a fingerprint search, but admitted that such a search was not conducted. The judge then intervened and asked how difficult and how successful it was to lift prints from weapons. Stubits answered that a search for latent fingerprints would not be very successful. Thus, the court established a point favorable to the government.

(2) Deborah Green, the credit manager of the Ithaca Gun Company in Ithaca, New York, was called by the government to produce an invoice showing shipment of the firearm in evidence from Ithaca, New York to St. Louis, Missouri. On cross-examination, Bland's counsel questioned the witness concerning the use of a copy of the invoice rather than the original. The judge interrupted the questioning and stated there was no issue concerning interstate commerce. The following colloquy then took place:

MR. HELFERS: Well, Judge, I believe that is an issue for the jury to decide.

THE COURT: Well, I think—if you can show evidence to the contrary I'll allow you to do it but I've never seen it done in the thirty years I've been practicing law.

MR. HELFERS: Well, Judge, you know, it's part of my job is to attempt to get the facts and to cross-examine before the jury and that's what I'm attempting to do.

THE COURT: Well, let's hear you do it then.

MR. HELFERS: Well—

THE COURT: Let's hear you do it, counsel. Go ahead and do it.

MR. HELFERS: Judge, I am a little bit concerned that—

THE COURT: Ask questions, counsel, and don't argue with me.

Thereafter, the trial judge took over the questioning of the witness as follows:

THE COURT: ... Miss Green, before you leave the stand I have a question or two for you.

MS. GREEN: Yes, sir.

THE COURT: Is there any other Ithaca Gun Company located in the United States that you know of?

MS. GREEN: Not that manufactures firearms.

THE COURT: All right. And at the time that this gun was manufactured was there any other company of that name manufacturing firearms that you know of?

MS. GREEN: No, sir, there was not.

THE COURT: Now when this gun was shipped from the state in which it was made it came to which other state?

MS. GREEN: I'm sorry, Your Honor.

THE COURT: From what state was it shipped?

MS. GREEN: It was shipped from New York to St. Louis, Missouri.

THE COURT: And St. Louis, Missouri is a different state from New York?

MS. GREEN: Yes, that's correct.

Thus, the judge once again assumed a prosecutorial role and reaffirmed the government's proof.

(3) The defense called a witness, William Blakely, a friend of Bland's who was present at the time of Bland's arrest. Blakely testified that he did not ever see Bland in possession of any gun. He testified he did see another man running ahead of and in the same direction as Bland. After a short cross-examination of Blakely by the prosecutor, the trial judge began a detailed cross-examination. The judge questioned Blakely about where he was standing, and what he saw concerning the police officers, the claimed unidentified party with the gun, and the actions of Bland during the incident.

From the transcript, it is apparent the judge was challenging the statements of the witness and attempted to show that the witness was mistaken about the directions the parties were running. When the defense counsel objected, the judge pointed out in a bench conference that there were certain ambiguities in Blakely's testimony and that he was trying to clear them up. We assume the judge did have good intentions. However, the examination was an immediate follow-up of the government's cross-examination and appears as further cross-examination; moreover, the questioning nature of the judge's examination clearly flavors the interrogation as prosecutorial in kind.

(4) The defendant Bland testified at length. On direct examination, Bland said he initially ran when the police arrived at the scene because he was wanted for a parole violation in Illinois for failure to report; he said he gave his brother's name to police to avoid identification for the same reason. He testified he had previously been accidentally shot and had gone to a hospital for treatment. After the government cross-examined, the judge in further extension of the government's cross-examination, extensively interrogated the defendant. The judge emphasized Bland's use of an alias because of the parole violation.

The court's examination in part reads:

THE COURT: I have one or two questions to ask then.

You told the jury and me that you walked away when you saw the police arriving because you didn't want to be arrested and taken down to the station and booked.

MR. BLAND: Yes, sir.

THE COURT: And you said you used the name Dwight which now you've said is the name of your brother.

MR. BLAND: Yes, sir.

THE COURT: When you were shot in the Kinloch you used the name Dwight also?

MR. BLAND: Yes, sir.

THE COURT: And why was that?

MR. BLAND: Because if I'd have been shot in my name then that would have been a violation also.

THE COURT: Just because you're shot is a violation?

MR. BLAND: Yeah—no. Certain place say some things you're not supposed to be involved in and I was wanted by the police when I got shot.

THE COURT: So you were wanted for something else then, not for being you—

MR. BLAND: No.

THE COURT: —is that right?

MR. BLAND: I was wanted for parole violation for failure to report.

THE COURT: All right. So it wasn't because you were shot, you were wanted because you failed to report on your probation?

MR. BLAND: Yes.

This line of questioning was cut off by objection from defense counsel. Thereafter, the judge questioned Bland's testimony about the man Bland alleged to be carrying the gun. The examination was as follows:

THE COURT: I have one last question I would like to ask you, Mr. Bland. Did this man you described as Jerry—did he have that sawed off shotgun?

MR. BLAND: Yes, sir. At one time or another.

THE COURT: And when you say at one time or another you mean on some occasion other than this night?

MR. BLAND: He had it several times that evening but I don't—I couldn't say that he had it when he ran.

THE COURT: And you don't know his last name?

MR. BLAND: No, sir, I don't.

THE COURT: And did you tell the police that the other man had a gun?

MR. BLAND: Yes, sir.

THE COURT: Did you tell them—did you tell the police what this man's name was?

MR. BLAND: No, sir.

THE COURT: Did you tell them where he lived?

MR. BLAND: No, sir.

THE COURT: How many other people saw him with the gun?

MR. BLAND: I don't know.

THE COURT: When he had the gun were there more than you around? Were there other people around?

MR. BLAND: Yes, sir. We had a couple other guys.

THE COURT: Was there an argument up there that night?

MR. BLAND: Not really, no, Your Honor, sir, but it might have been.

THE COURT: Were you involved in any argument?

MR. BLAND: No, sir, I wasn't.

This court has always been reluctant to disturb a judgment of conviction by reason of a few isolated, allegedly prejudicial comments of a trial judge. *Cf. United States v. Haley,* 452 F.2d 398, 404 (8th Cir. 1971), *cert. denied,* 405 U.S. 977, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972); *United States v. Porter,* 441 F.2d 1204, 1215–16 (8th Cir.), *cert. denied,* 404 U.S. 911, 92 S.Ct. 238, 30 L.Ed.2d 184 (1971). This is particularly true in a long trial. In each case a balancing process must be employed to determine whether the trial judge's comments have pervaded the overall fairness of the proceedings. We think the balance is adversely tipped against the defendant in a criminal trial where the judge's role loses its color of neutrality and tends to accentuate and emphasize the prosecution's case.[1] A trial judge's isolated questioning to clarify ambiguities is one thing; however, a trial judge cannot assume the mantle of an advocate and take over the cross-examination for the government to merely emphasize the government's proof or to question the credibility of the defendant and his witnesses. A judge's slightest indication that he favors the government's case can have an

1. *See United States v. Hickman,* 592 F.2d 931, 934–35 (6th Cir.1979); *United States v. Sheldon,* 544 F.2d 213, 218 (5th Cir.1976); *United States v. Hill,* 332 F.2d 105 (7th Cir.1964); *United States v. Brandt,* 196 F.2d 653, 655–56 (2d Cir.1952).

immeasurable effect upon a jury.[2] A trial judge should seldom intervene in the questioning of a witness and then only to clarify isolated testimony. A trial court should never assume the burden of direct or cross-examination.

In the present case the judge's questioning was not necessary; the government was represented by competent and experienced counsel. *See United States v. Hickman,* 592 F.2d 931, 934 (6th Cir.1979). Upon return of the verdict the judge immediately informed the jury that he also believed the defendant guilty. Perhaps this statement reflected his attitude at trial. However, although the judge did not intend to prejudice the defendant's trial in this case, the appearance of aiding the government is clearly apparent.

 After the jury announced the verdict the trial judge made the following statement to the jurors:

The criminal cases generally that are brought in the Federal Court are cases that are thoroughly investigated. The chance of errors being made and omissions being made and the evidence not being present in the Federal Court are far less likely than they are in the State Court. Not so much because the prosecutors are that much better although I think they are good, but because they have the resources to do an excellent job. The FBI, the various Federal agencies, they do an excellent job in gathering the evidence, investigating the matters and of course, the case is tried promptly and of course, the State Courts have many, many, many cases where the Federal Courts only have a handful compared to the large number tried in the State Court so that when a defendant comes to trial in this Court—although not always and you shouldn't think that what I'm saying means that everybody who's charged is guilty, but the chances of a person having a valid defense in the Federal Court are

far less than they are in the State Court and the jurors are much more likely to return a verdict of conviction here than in the State Court.

Counsel has called our attention to these comments. Because these remarks were made after the verdict, they concededly cannot be deemed prejudicial; however, they do indirectly reveal the judge's feelings throughout the trial. The trial judge's attitude may have unconsciously driven him to assume a prosecutorial role in the trial, a role which destroyed fair process for the accused.

We also call attention to these remarks after the verdict under this court's general supervisory capacity over the trial courts. The likelihood that several of the jurors in this case would sit on additional federal criminal cases following this trial is obvious. These comments by the trial judge are clearly prejudicial to the trial of others charged in federal court. Whether the remarks result in actual prejudice can only be determined by the state of mind of each individual juror. We request district court judges not to make such comments; their import obviously diminishes the presumption of innocence of any accused tried in federal court. We deem such remarks to be inaccurate and irrelevant in the trials of criminal defendants in federal court.

The judgment of conviction is reversed and remanded for a new trial.

**2.** *See United States v. Hickman,* 592 F.2d 931, 934 (6th Cir.1979); *United States v. Karnes,* 531 F.2d 214, 216–17 (4th Cir.1976); *United States v. Sheldon,* 544 F.2d 213, 219 (5th Cir. 1976); *United States v. Hoker,* 483 F.2d 359, 368 (5th Cir.1973); *United States v. Wyatt,* 442 F.2d 858, 861 (D.C.Cir.1971).