**Dorothy VAN LEIRSBURG, Appellee,**

v.

**SIOUX VALLEY HOSPITAL, A South Dakota Corporation, Appellant.**

No. 86–5362.

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1987.

Decided Oct. 13, 1987.

Carleton R. Hoy and Rick W. Orr, Sioux Falls, S.D., for appellant.

James E. McMahon, Sioux Falls, S.D., for appellee.

Before FAGG and WOLLMAN, Circuit Judges, and TIMBERS,* Circuit Judge.

WOLLMAN, Circuit Judge.

Sioux Valley Hospital Corporation (Sioux Valley) appeals from a judgment entered on a jury verdict that awarded Dorothy Van Leirsburg $100,000 in her negligence action against Sioux Valley. We affirm.

Mrs. Van Leirsburg was a patient at the Sioux Valley Hospital from January 29 through February 6, 1983, receiving treatment for bronchial asthma. The hospital administered intravenous (IV) injections to help her breathing and frequently tested her blood to determine its oxygen and carbon dioxide levels. Laboratory technologists obtained the blood samples by inserting a needle into the radial artery of Mrs. Van Leirsburg's wrist, a procedure called an "arterial stick." Most of the arterial sticks were performed on Mrs. Van Leirsburg's right wrist. Mrs. Van Leirsburg testified that she had no previous injuries to her right wrist.

On February 1, 1983, at 2:15 p.m., the Sioux Valley laboratory technologist performing the arterial stick had trouble obtaining a sufficient quantity of blood. She moved the needle around under Mrs. Van Leirsburg's skin, probing for the artery. Mrs. Van Leirsburg experienced intense pain and asked the laboratory technologist to stop jabbing the needle. Mrs. Van Leirsburg complained about pain in her right wrist during the remainder of her hospital stay.

After Mrs. Van Leirsburg was discharged from the hospital, she consulted her personal physician, Dr. Marvin E. Wingert, about continuing pain in her right wrist. Dr. Wingert was unable to identify what was wrong with her wrist and referred her to the Medical X–Ray Clinic in Sioux Falls. The radiologist reading the X-ray found no evidence of a fracture. After unsuccessful visits by Mrs. Van Leirsburg to other specialists in Sioux Falls, Dr. Wingert sent her to the Mayo Clinic in Rochester, Minnesota. There, Dr. Robert Beckenbaugh, an orthopedic surgeon, diagnosed her condition as avascular necrosis of the scaphoid bone of her right wrist. The scaphoid bone was dying because the blood supply to the bone had been cut off. Dr. Beckenbaugh performed surgery on Mrs. Van Leirsburg's wrist, removing the scaphoid bone and inserting a silicone rubber replacement bone. The pain continued, necessitating a second surgery in which Dr. Beckenbaugh removed an entire row of wrist bones. Mrs. Van Leirsburg now has

---

* The HONORABLE WILLIAM H. TIMBERS, United States Circuit Judge for the Second Circuit, sitting by designation.

a permanent 35% impairment in the use of her wrist.

■ Sioux Valley's first contention on appeal is that the district court[1] erred in instructing the jury on the doctrine of res ipsa loquitur. Sioux Valley argues that Mrs. Van Leirsburg offered substantial direct evidence of negligence and that thus the doctrine of res ipsa loquitur was no longer applicable.

We apply South Dakota law in this diversity action. The doctrine of res ipsa loquitur is a rule of evidence that permits a jury to infer or presume negligence in the absence of specific facts that constitute negligence. *Malloy v. Commonwealth Highland Theatres, Inc.*, 375 N.W.2d 631, 636 (S.D.1985). A plaintiff may, however, introduce some evidence of negligence without losing the benefits of a res ipsa instruction. *Fleege v. Cimpl*, 305 N.W.2d 409, 414 (S.D.1981). The essential elements of res ipsa loquitur are: "(1) the instrumentality which caused the injury must have been under the full management and control of the defendant or his servants; (2) the accident was such that, according to knowledge and experience, does not happen if those having management or control had not been negligent; and (3) the plaintiff's injury must have resulted from the accident." *Van Zee v. Sioux Valley Hospital*, 315 N.W.2d 489, 492 (S.D.1982); *Shipley v. City of Spearfish*, 89 S.D. 559, 235 N.W.2d 911, 913 (1975).

Additionally, in medical malpractice cases involving an injection the plaintiff must make at least a minimal showing through expert testimony that the defendant breached a recognized standard of care. *Van Zee v. Sioux Valley Hospital*, 315 N.W.2d at 493. The rationale behind this fourth requirement is that adverse reactions may result from an injection for reasons other than negligence. *Id.*

Even in medical malpractice cases, however, the doctrine of res ipsa loquitur may become inapplicable if the plaintiff introduces substantial direct evidence of negligence. *Magbuhat v. Kovarik*, 382 N.W.2d 43, 47 (S.D.1986). Thus, the medical malpractice plaintiff must introduce "some" but not "substantial" evidence of negligence. Unfortunately, the South Dakota decisions offer no clear guidelines delineating the boundary between the permissible "some" and the excessive "substantial" evidence that determines when a res ipsa instruction may properly be given. *See Malloy v. Commonwealth Highland Theatres, Inc.*, 375 N.W.2d at 638 (Morgan, J., concurring in part, dissenting in part).

Three doctors testified at trial. Dr. Wingert stated that in his opinion the avascular necrosis resulted from a thrombosis, or blood clot, in the artery to the scaphoid bone resulting from the laboratory technologist's "excessive deep probing." Dr. Wingert testified that the laboratory technologist violated the recognized standard of care for arterial sticks. Dr. Beckenbaugh testified, however, that in his opinion the cause of the avascular necrosis was related to the manipulation and insertion of the IVs in Mrs. Van Leirsburg's wrist. He did not testify that the hospital was negligent in inserting the IVs.

Sioux Valley's expert witness, Dr. James House, testified that there was no medical literature to support the theory that an improper arterial stick or insertion of an IV could cause avascular necrosis. Because an X-ray taken at the Mayo Clinic revealed a fracture, he concluded that Mrs. Van Leirsburg's condition resulted from a previous fracture. In Dr. House's opinion, Sioux Valley had not been negligent.

In the light of the varying views of the experts, it can hardly be said that Mrs. Van Leirsburg offered substantial proof of negligence. Under *Van Zee*, Mrs. Van Leirsburg was required to make a minimal showing that Sioux Valley had breached a standard of care. She did this through Dr. Wingert's testimony. Accordingly, we conclude that the district court correctly instructed the jury on the doctrine of res ipsa loquitur.

---

**1.** The Honorable Fred J. Nichol, United States Senior District Judge for the District of South Dakota.

Sioux Valley next argues that the district court should have granted a mistrial because it injected itself so far into the proceedings that it became an advocate for Mrs. Van Leirsburg, denying Sioux Valley a fair trial. Mrs. Van Leirsburg responds that the district court was merely clarifying the witness' testimony and that Sioux Valley's counsel invited the court's participation by engaging in a dialogue with the court in front of the jury.

Mrs. Van Leirsburg called Wesley Halbritter, administrative director of Sioux Valley's laboratory, as a hostile witness to establish that Sioux Valley could not identify which medical technologist had performed the arterial stick in question. The court inquired whether the hospital had a custom of keeping records of the laboratory technologists who perform the arterial sticks:

THE COURT: Now, when nurses make a record on the board or whatever it is that they have by each bed, they indicate by initials or something as to who the nurse is, don't they?

A. To my knowledge,—I don't know all the total—

THE COURT: Well, the doctor makes records; he indicates by his initials or his name that he did it, doesn't he?

A. Yes, mm-hmm.

THE COURT: But they don't do this with the technologists by name?

At this point Sioux Valley's counsel engaged in a colloquy with the court:

MR. HOY: Well, wait a minute. That isn't quite true, either, Judge, because the records show, for example, who put the IV and this kind of thing, but we cannot tell with respect to the arterial sticks that show at that time who actually did that one at 2:15. We just don't know.

THE COURT: Well, what I'm trying to find out here, and I recognize I don't want to take over this trial, but what I am saying is, it seems very strange to me—and if there's an explanation, which may be what's coming out now—that the hospital—or when the names were furnished as to the people that were on duty

at that time, and there were maybe—well anyway, there's 65 technologists—it seems strange to me that they couldn't pinpoint down the person that did the actual withdrawing.

MR. HOY: Well now, wait a minute. I apologize for taking on the Court, but I think the Court's remarks in front of this jury are not proper at this time. The names were submitted to Mr. McMahon, and there weren't that many on any given day. We don't know. He could have taken the depositions. There were only six or seven, as I understand it, on that day that he could have asked us to produce and examined each one of them.

THE COURT: You don't think it's any burden that you have at all in your defense of this to do your own checking on your own people?

MR. HOY: We did, and we do not know. We were not able to do any more—

THE COURT: How can you expect he would know, then?

MR. HOY: Because he could have at least taken their depositions to find out.

THE COURT: Well, we'll see.

■ The court may interrogate witnesses, whether called by itself or by a party. Fed.R.Evid. 614(b). A trial judge will not be reversed for excessive judicial intervention unless the record shows that he was actually biased or that he projected the appearance of advocacy or partiality to the jury. *Warner v. Transamerica Ins. Co.*, 739 F.2d 1347, 1351 (8th Cir.1984).

Sioux Valley contends that the court's questions and comments had the effect of shifting the burden of proof and implied that Sioux Valley had something to hide. We do not agree.

■ It was entirely permissible for the trial court to question the witness for the purpose of clarifying whether the hospital had a custom of not keeping records of the laboratory technologists who performed arterial sticks or whether the records were simply not available in this particular instance. The trial court's comment that it was "strange" that the hospital did not

keep such records is more problematic. A trial judge should say nothing that might prejudice a litigant in the eyes of the jury. *Coast-to-Coast Stores, Inc. v. Womack-Bowers, Inc.*, 818 F.2d 1398, 1401 (8th Cir. 1987). Nevertheless, a few improper comments do not automatically necessitate a reversal. *Champeau v. Fruehauf Corp.*, 814 F.2d 1271, 1275 (8th Cir.1987); *Hale v. Firestone Tire & Rubber Co.*, 756 F.2d 1322, 1330 (8th Cir.1985); *United States v. Singer*, 710 F.2d 431, 436 (8th Cir.1983). Reviewing courts employ a balancing process to determine whether the trial judge's comments have destroyed the overall fairness of the trial. *United States v. Bland*, 697 F.2d 262, 265 (8th Cir.1983).

 We are satisfied that the trial court's comments on the hospital's record keeping system, although gratuitous, when read in context did not destroy the overall fairness of the trial. *Cf. Champeau v. Fruehauf Corp.*, 814 F.2d at 1275 (trial court interferred with defense expert's testimony one hundred forty-five times).

The second line of questioning that the court pursued concerned the standard of care for performing arterial sticks. The court questioned Halbritter with respect to his deposition testimony to the effect that if a laboratory technologist is unable to draw blood in the first two attempts, he should call a doctor for help. Sioux Valley contends that this constituted an entirely new line of questioning and did not serve the purpose of clarifying previous testimony.

A judge's questioning of witnesses, however, is not limited to clarifying previous testimony. The court may take an active role in developing the evidence. *Warner v. Transamerica Ins. Co.*, 739 F.2d at 1351. Here, the trial judge gave both sides an opportunity to question Halbritter further in the light of the court's questions, an opportunity that both sides declined.

Finally, we note that the court gave curative instructions to the jury similar to those given in *Hale*. The court, indicating that it may have gone a bit too far in questioning Halbritter, instructed the jury that "the law of the United States permits a federal judge to ask questions and comment on the evidence * * *. Such comments are only expressions of the judge's opinion as to the facts; and the jury may disregard the Court's comments on the facts entirely." We conclude that these instructions adequately remedied any harm that might otherwise have resulted from the trial court's efforts to clarify the record and to develop the evidence, and we therefore hold that Sioux Valley was not prejudiced by the court's questioning of the witness.

The judgment is affirmed.