**UNITED STATES of America, Appellee,**

v.

**Larry A. JERDE, Appellant.**

**No. 87–5193.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 17, 1987.

Decided March 3, 1988.

Rehearing and Rehearing En Banc
Denied April 14, 1988.

---

Kevin J. Short, Minneapolis, Minn., for appellant.

John Ulrich, Sioux Falls, S.D., for appellee.

Before John R. GIBSON, BOWMAN and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

Larry A. Jerde (Jerde) appeals from his five-count conviction by a jury of willfully failing to file employer's quarterly tax returns for the third and fourth quarters of 1984, and willfully failing to file personal income tax returns for the 1982, 1983, and 1984 calendar years, in violation of 26 U.S.C. § 7203.[1] Jerde argues that the dis-

---

1. 26 U.S.C. § 7203 provided in relevant part for the tax years in question:

Any person * * * required * * * to make a return, * * * who willfully fails to * * * make such return * * * at the time or times

trict court[2] erroneously instructed the jury concerning willfulness and good faith, and that the district court improperly interjected itself into the trial by interrogating Jerde on two occasions. We affirm.

## I.

At the time of trial, Jerde had practiced as a certified public accountant for approximately eleven years. In December 1980, Jerde started his own accounting practice in Watertown, South Dakota. In December 1982, Jerde sold fifty percent of this practice to Dennis Jeske (Jeske), a former Internal Revenue Service agent. The practice was incorporated as Jerde & Jeske, Ltd., with each owning fifty percent of the stock. The firm suffered a loss during the 1983 tax season. The business relationship between Jerde and Jeske deteriorated, and Jeske left the firm in June 1983.

After settlement negotiations failed, Jeske filed a lawsuit in February 1984 to recover the $11,000 he had invested in the business. One of the issues in the lawsuit was whether Jerde & Jeske, Ltd. was a corporation or a joint venture. Jerde argued that the corporation was never operational because Jeske had only paid $11,000 of the $15,000 purchase price. This litigation continued through November 24, 1986.

During the pendency of the state court litigation, Jerde did not file employer's quarterly tax returns for the third and fourth quarters of 1984. Jerde applied for six-month extensions of time in which to file his 1982, 1983, and 1984 personal income tax returns but did not file the returns before the expiration of the respective extension periods. Jerde claims to have filed the returns in question in December 1986.[3]

In March 1987, Jerde was convicted of five counts of willfully failing to file these returns. At trial, Jerde contended that his failure to file the tax returns was not will-

ful. Under penalty of perjury, each tax return requires the signer to declare, to the best of his knowledge and belief, that the return is true, correct, and complete. Jerde's theory of defense was that his failure to file the returns was not willful because he acted under the good-faith belief that he could not accurately complete the returns until the ongoing state court litigation determined whether Jerde & Jeske, Ltd. was a corporation or a joint venture.

## II.

 Jerde argues that the district court erroneously instructed the jury concerning willfulness and good faith. Four general principles govern our evaluation of the adequacy of jury instructions. First, the instructions must inform the jurors of the essential issues before them and of the permissible ways of resolving those issues. *United States v. Montgomery,* 819 F.2d 847, 851 (8th Cir.1987). Second, a party is entitled to an instruction on his theory of the case, provided the instruction is timely requested, supported by the evidence, and correctly states the law. *Id.* at 851–52. Third, the district court is afforded considerable discretion in choosing the form and language of jury instructions. *Id.* at 852. Fourth, the adequacy of jury instructions is determined by reviewing them as a whole, *United States v. Kouba,* 822 F.2d 768, 770 (8th Cir.1987), and in the context of the trial. *United States v. Park,* 421 U.S. 658, 674, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975); *United States v. McMillan,* 820 F.2d 251, 256 (8th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 234, 98 L.Ed.2d 193 (1987).

 Jerde contends that the district court erroneously instructed the jury that the government was not required to prove bad purpose or evil motive to establish willfulness. The instruction in question stated in relevant part:

required by law or regulations, shall * * * be guilty of a misdemeanor[.]

2. The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

3. The Internal Revenue Service has no record of receiving some of these returns. For the purpose of this appeal, it is unnecessary for us to determine whether the returns were filed in December 1986.

Willfulness is an essential element of the crime of failure to file an income tax return. The word "willfully["] used in connection with this offense means a voluntary, intentional violation of a known legal duty, or otherwise stated, with the wrongful purpose of deliberately intending not to file a return which defendant knew he should have filed in order to prevent the government from knowing the extent of and knowing the facts material to the determination of his tax liability. *You are instructed that the government is not required to prove bad purpose or evil motive.* (Emphasis added.)

We have stated that the words "bad purpose or evil motive" are " 'merely another way to convey the concept of willfulness.' " *United States v. Ojala,* 544 F.2d 940, 947 (8th Cir.1976) (quoting *United States v. Pohlman,* 522 F.2d 974, 977 (8th Cir.1975) (en banc), *cert. denied,* 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976)). Based on this statement, Jerde argues that it was misleading to instruct the jury that the government was not required to prove bad purpose or evil motive, because the terms "bad purpose or evil motive" and "willfulness" are essentially synonymous for this purpose. In addition, Jerde argues that *Pohlman* held that a trial court is not required to instruct the jury that bad purpose or evil motive is required to establish willfulness, not that the government is not required to prove bad purpose or evil motive.

"Willfulness in this context simply means a voluntary, intentional violation of a known legal duty." *United States v. Pomponio,* 429 U.S. 10, 12, 97 S.Ct. 22, 24, 50 L.Ed.2d 12 (1976). It does not require proof of any other motive. *Id.* Our references in *Ojala* and *Pohlman* to "bad purpose or evil motive" meant no more than the intent to violate a legal duty. *See Pomponio,* 429 U.S. at 11, 97 S.Ct. at 23. We conclude that the challenged jury instruction was not misleading, particularly when the charge as a whole made repeated reference to the appropriate legal standard. *See Ojala,* 544 F.2d at 947 (jury instruction that minimized good motive was proper

because government was not required to prove anything but a voluntary, intentional violation of a known legal duty).

■ As indicated above, Jerde's theory of defense was that his failure to file the returns in question was not willful because he acted under the good-faith belief that he could not accurately complete the returns until the ongoing state court litigation determined whether Jerde & Jeske, Ltd. was a corporation or a joint venture. He argues that his theory of defense was effectively removed from the jury's consideration by the jury instruction that stated in relevant part:

> You are instructed that the existence of wilfulness required to be proven by the government is not negated by the excuse of pressing business problems including any existing State court litigation. These matters however may be considered by you in determining whether or not the defendant voluntarily and intentionally violated a known duty. If you should find that the government has failed to prove beyond a reasonable doubt that the defendant's failure to file was willful, then your verdict should be for the defendant.

The propriety of this instruction is apparent in the context of the whole trial. Jerde's counsel sought to introduce a copy of the state court's memorandum decision into evidence. At that point, the district court gave the following limiting instruction:

> You have heard evidence of the existing State Court litigation. The court does advise you that the existence of State Court litigation is not an excuse for failure to timely file United States Internal Revenue Service income tax returns.
>
> The court will be submitting to you an issue of willfullness [sic].
>
> I am going to permit Exhibit 30, which is the memorandum decision of the State Court decision, to be introduced for the limited purpose of you to determine what effect that may have had upon the issue of willfullness [sic], which is an element

of the offense of failing to timely file an income tax return.

So for that limited purpose, Exhibit 30 will be received, in other words, not as an excuse for failure to file, but simply for you to determine and assess that evidence in light of your requirement to find that the defendant willfully failed to file timely his 1982, '83 and '84 income tax returns and the 941 Form[s], which are the subject of Counts I and II.

We conclude that the challenged jury instruction did not remove Jerde's theory of defense from the jury. This instruction, particularly when read in conjunction with the limiting instruction, properly instructed the jury that the mere existence of state court litigation does not negate willfulness. *See United States v. Sempos*, 772 F.2d 1, 2 (1st Cir.1985) (financial or domestic problems do not negate willfulness as used in 26 U.S.C. § 7203). The instruction also focused the jury's attention on the appropriate standard, "whether * * * the defendant voluntarily and intentionally violated a known duty," and informed the jury that it could consider Jerde's pressing business problems, including the existence of state court litigation, in making that determination.[4]

■ Jerde's next two arguments concern the jury instructions given by the district court on the issue of good faith. First, Jerde argues that because the concept of good faith simply requires a person to act with an honest belief or with honest intentions, the following jury instruction improperly raised the level of that standard: "In the traditional sense 'good faith' connotes a moral quality; it is equated with honesty of purpose, freedom from fraudulent intent and faithfulness to a duty or obligation."

"Good faith is * * * [a] quality with no technical meaning or statutory definition, and it encompasses, among other things, an honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage[.]" Black's Law Dictionary 623 (5th ed. 1979); *see Kouba,* 822 F.2d at 771. Viewed in the context of the whole charge, we conclude that the district court did not err in giving the challenged instruction.

Second, Jerde contends that the district court's use of the phrase "good-faith reason" rather than "good-faith belief" in the following instruction could have led the jury to judge Jerde's good-faith defense under an objective standard:

You are instructed that since the statute under which the defendant is charged requires the government to prove wilfulness, the law recognizes a good-faith reason for not filing as required by law. If you believe that the defendant had a good-faith reason for not filing, then this finding of good faith would constitute a lack of wilfulness on his part and accordingly he would be entitled to a verdict of not guilty as to each of those counts to which your finding applies. To say the defendant acted in "good faith" is but another way of stating that his acts were not "willful."

■ We agree that a subjective rather than an objective standard is to be applied in evaluating a good-faith defense to the charge of willfully failing to file tax returns under 26 U.S.C. § 7203. *United States v. Wells,* 790 F.2d 73, 75 (10th Cir. 1986); *United States v. Aitken,* 755 F.2d 188, 192 (1st Cir.1985). In the context of the trial and of the jury charge as a whole, however, we conclude that the use of the words "good-faith reason" did not transmute from a subjective to an objective test the standard to be applied by the jury to Jerde's claimed good-faith belief that he could not timely file the returns in ques-

---

4. The present case is distinguishable from *United States v. Burton,* 737 F.2d 439 (5th Cir.1984), which held that a jury instruction stating that "[a] good faith belief that wages are not income is not a defense to [charges under 26 U.S.C. §§ 7203 and 7205]" improperly removed Burton's theory of defense from the jury's consider-

ation. *Id.* at 440–41. Jerde's theory of defense was submitted for the jury's consideration. The district court merely clarified that the existence of state court litigation was not a defense; it was only relevant in determining whether Jerde voluntarily and intentionally violated a known legal duty.

tion.[5]

Finally, Jerde argues that the district court's failure to give his proffered jury instructions [6] deprived him of an instruction on his theory of defense. We disagree.

Although a defendant is entitled to an instruction on his theory of defense, if it is timely requested, supported by the evidence, and correctly states the law, *Montgomery*, 819 F.2d at 851–52, "[a] defendant is not entitled to a particularly worded instruction where the instructions given adequately and correctly cover the substance of the requested instruction[s]." *Kouba*, 822 F.2d at 771. We conclude that the jury instructions given adequately and correctly covered Jerde's defense theory.

### III.

Jerde argues that his convictions should be reversed because the district court improperly interjected itself into the trial by interrogating him on two occasions. At the end of direct examination, the court asked Jerde whether one would be subject to fraud if he filed an informational return within the six-month extension period notifying the Internal Revenue Service that the return was incomplete due to the unavailability of information. Then, at the end of recross-examination, the court again questioned Jerde concerning the options available to him at the end of the six-month extension period. Specifically, the court asked whether it was Jerde's position "that [his] only option[s] [were] to not file a return, or else file it under penalty of perjury," and whether one would be subject to fraud if he overstated his income and overpaid his tax. Jerde argues that by suggesting alternatives to his chosen course of action, the court conveyed the impression to the jury that Jerde's position was unreasonable and should not be believed.

■ The trial court has a duty to make the interrogation of witnesses and the presentation of evidence effective for the ascertainment of truth. Fed.R.Evid. 611(a)(1). In doing so, the trial court is permitted to interrogate witnesses, Fed.R. Evid. 614(b), particularly when it deems the questioning necessary to clarify testimony and to elicit necessary facts. *United States v. Gleason*, 766 F.2d 1239, 1243 (8th Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 801, 88 L.Ed.2d 77 (1986).

■ The trial court's intervention should not be so extensive as to destroy the overall fairness of the trial, however. Unfairness to the defendant can result where the trial court "loses its color of neutrality and tends to accentuate and emphasize the prosecution's case." *United States v. Bland*, 697 F.2d 262, 265 (8th Cir.1983) (footnote omitted). Although the trial court may interject isolated questions to clarify ambiguities, it "cannot assume the mantle of an advocate and take over the cross-examination for the government to merely emphasize the government's proof or to question the credibility of the defendant[.]" *Id.*

■ After a review of the record, we conclude that the district court did not become an advocate for the prosecution in this case. Its questions were not asked to merely emphasize the government's proof or to question Jerde's credibility. Near the end of direct examination, Jerde's counsel

---

5. We note that while discussing Jerde's design, motive, and intent for not filing the returns, Jerde's counsel, in opening and closing arguments, stated that Jerde had a "good-faith reason" for not filing the returns.

6. The instructions proffered by Jerde were:
 Good faith defenses to the criminal charge of failing to timely file tax returns are a bonified [sic] misunderstanding of, to-wit:
 1. Defendant's liability for a tax;
 2. Defendant's duty to make a return; or
 3. The adequacy of the records Defendant maintains.

The law requires every tax payer [sic] to certify the correctness and validity of his return by executing the following acknowledgment:
 "Under penalty of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct and complete."
 Mere failure to pay a tax is not a crime, since otherwise a taxpayer might be imprisoned for debt.

asked Jerde whether, at the end of the six-month extension period, he had any options other than to file a false return and perjure himself or to not file a return until he knew the information was correct. Jerde somewhat ambiguously responded: "Not really, not after the six-month period." The district court's questions merely sought to clarify whether Jerde believed those were the only two options available.

Further, the district court acted to minimize any prejudicial effect that might have resulted from its efforts to clarify the record. It did not express an opinion as to the facts or comment directly on Jerde's testimony, *see Ray v. United States*, 367 F.2d 258, 263 (8th Cir.1966), *cert. denied*, 386 U.S. 913, 87 S.Ct. 863, 17 L.Ed.2d 785 (1967); it provided both sides with an opportunity to further question Jerde in light of the court's questions, *see Van Leirsburg v. Sioux Valley Hosp.*, 831 F.2d 169, 173 (8th Cir.1987); and it instructed the jury that any questions the court had asked during the course of the trial did not reflect the court's opinion on those matters, but were merely intended to bring out facts that had not been fully covered by testimony.

The judgment is affirmed.