UNITED STATES of America, Appellee,

v.

Franklin Victor TESACK, Appellant.

No. 73–1709.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 10, 1975.

Decided July 16, 1976.

---

Thomas M. McCulloch, Wheeling, W. Va. (court-appointed) for appellant.

James F. Companion, U. S. Atty., Wheeling, W. Va., for appellee.

Before CLARK, Associate Justice,* HAYNSWORTH, Chief Judge, and BOREMAN, Senior Circuit Judge.

PER CURIAM:

Appellant, Franklin Victor Tesack, and four others were indicted on July 7, 1971, on charges of concealing and possessing stolen United States Post Office property in violation of 18 U.S.C. § 641 and conspiring to conceal and possess such property in violation of 18 U.S.C. § 371. The case came on for trial at Wheeling, West Virginia, on March 20, 1972, before a jury and with all five defendants represented by the same counsel. On the third day of the trial, (March 22), Tesack and his co-defendant Truglio withdrew their not-guilty pleas, pled guilty to the substantive count, and the other count was to be dismissed. A third defendant, Karen Bonacci, pled guilty to an information filed charging her with a misdemeanor involving the same transaction. The indictment was dismissed as to her and the other two defendants (Joseph A. Bonacci Jr. and Willis Harris). The trial judge, after giving the usual admonitions, interrogated Tesack and Truglio, and each admitted to possession and concealment with intent to convert to their own use of 555 postal money orders of the value of over $100 and $211 of United States postage stamps, which they each knew were stolen from the Post Office Annex at Steubenville, Ohio. Mrs. Bonacci, after also being admonished and upon being questioned, admitted having in her possession and concealing, with intent to convert to her own use, less than $100 of the money orders and stamps which she knew were the proceeds of the burglary of the same Post Office Annex. Sentencing was deferred awaiting presentence reports. A week later, Truglio filed a motion for leave to withdraw his guilty plea and pled not guilty. It was denied after a hearing, and an abortive appeal brought the case back for sentencing on June 8, 1973; after sentencing Tesack also filed a motion to withdraw his guilty plea and file a not guilty one. Both Truglio's and Tesack's motions were then denied, and on appeal Truglio's case was reversed with instructions to grant his motion. *United States v. Truglio,* 493 F.2d 574 (4th Cir. 1974). Tesack's appeal was remanded for a hearing. The prosecution then elected not to contest Tesack's motion and it was granted. The case went to trial against both defendants on April 16, 1975, and a directed verdict on the substantive count was entered for Truglio; the jury found him not guilty on the conspiracy count but found Tesack guilty on both counts. He was sentenced to four years imprisonment on each count running concurrently. We affirm the judgment.

I.

Tesack first claims that the trial judge erred in admitting into evidence against Truglio alone and for impeachment purposes only the transcript of the hearing on March 22, 1972, at which Truglio, Tesack and Mrs. Bonacci pled guilty and admitted possessing and concealing the stolen post office property, charged with intent to convert the same to their own use. Tesack claims that this violated both his Fifth Amendment right against self-incrimina-

* Associate Justice Tom C. Clark, United States Supreme Court (Retired), sitting by designation.

tion and that of due process. He readily admitted that the evidence was received against Truglio alone and for impeachment purposes only after the latter had categorically denied any connection whatever with the offenses charged in the indictment. He says that the trial judge should have excised from the record, before its admission into evidence, all references to him that were in the same, and that, failing to do so, the jury was thereby necessarily prejudiced against him. Our study of the transcript leads us to the opposite conclusion: The jury could have found Truglio not guilty only if it completely ignored or put no substance in his former plea and the admissions accompanying it. While on the other hand, it was obliged to hold Tesack guilty regardless of the consideration it gave to his former plea and the admissions accompanying it. Apparently the jury had the record and read it carefully; still it freed Truglio and convicted Tesack. The difference lies in the strong evidence against Tesack. There is not a scintilla of evidence that indicated that Truglio conspired. On the other hand, the evidence of guilt against Tesack is both massive and conclusive.

Tesack was found at 3 a. m. in the morning, driving a black Dodge panel truck with the stolen post office safe in it; he was driving the truck, he testified, from his cousin's house (Joseph A. Bonacci, Jr.), where Tesack had stored it some three days before, to the home of Randall Bufo, whom he described as "an acquaintance." The safe had been torched open in the Bonacci garage during the three-day period, and in the safe was found the property that Tesack was charged with possessing and concealing. The Dodge truck was proven to be the vehicle that was used in moving the 1400 pound safe from the post office to the Bonacci garage, and an automatic jack found in the Dodge truck had been used to move the safe from its original position in the post office to the Dodge truck. Also in the truck was found a pair of welder's gloves that were apparently used in torching the safe. The windows of the garage were covered up with old cloth to hide the

view; and on its floor were the burnt stubs of some 16 matches apparently used to light the torch. Considerable slag had fallen to the floor as the metal was torched and melted; and a garden hose was lying uncoiled ready for use in the operation. There was a basement adjacent to the garage in which there was a table that had upon it a number of pieces of cardboard used by the post office in separating the sheets of stamps, and a sheaf of white paper used by the post office to wrap postal cards into packages of 50 cards. Such evidence needed no bolstering up by Tesack's earlier plea of guilty with its accompanying admissions of guilt. If there was error in its admission, we find it entirely harmless.

But if this conclusion is found impermissible, still we find ourselves obliged to affirm the judgment under the holding of *Harris v. United States,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). There the Court held that a statement of a defendant, although rendered inadmissible in the prosecution's case in chief as being violative of *Miranda v. State of Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was nevertheless admissible for impeachment purposes to attack the credibility of a defendant's trial testimony. As Chief Justice Burger said in *Harris* :

> Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury . . . Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more here than utilize the traditional truth-testing devices of the adversary process. At 225, 91 S.Ct. at 645.

As the Chief Justice points out, the "shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." At 226, 91 S.Ct. at 646.

Tesack says that *Harris* "can easily be distinguished into oblivion" on two grounds. First, because it did not involve an involun-

tary confession; and second, the written statement of *Harris* was not shown to the jury. But these are distinctions without a difference. Tesack's confession of guilt was never found involuntary. Indeed, this court in its opinion distinguished the facts as between Truglio and Tesack, finding that "the district judge should have conducted a much more searching inquiry . . . especially with respect to Truglio." 493 F.2d at 579. It found that counsel, who represented all five of the defendants at the hearing told the district judge that Truglio had taken an "equivocal position on the proposed plea," Id. The Court of Appeals further found that Truglio repeatedly told counsel that "he did not want to plead guilty"; that counsel threatened to withdraw unless Truglio pled guilty and that "the coercive and abrasive nature of their discussion (Truglio and his counsel) during the course of the plea negotiations stands unrefuted." In addition, Truglio claimed that he was under the influence of drugs at the time he entered his plea; that prescriptive medication was taken in massive doses for a severe diabetic condition which exhibited itself in running sores on his lower legs; and that he really did not understand what was going on. To the contrary, counsel advised the district judge that "Mr. Tesack has indicated *finally* to me that he would tender his plea." And at no time, until June 8, 1973, when Tesack filed his motion for leave to withdraw his plea, had he indicated that he had been overreached. Indeed he had served 11 months of his term when, on the remand of Truglio's motion for leave to withdraw his plea, he decided to make the same claim. Tesack had taken no medication; on the contrary he had agreed to plead guilty early in the negotiations, and it was Truglio who delayed the plea bargaining while the jury waited for some three hours because of his refusal to plead guilty. On the facts Truglio's case is a far cry from Tesack's; moreover the Court of Appeals held that Truglio had been denied the effective assistance of counsel while Tesack's case was remanded for a hearing. While Tesack claims that the Government's decision not to oppose his

motion is tantamount to a finding of the involuntariness of his confession; we cannot so agree. Given the situation the Government found itself in, nothing would have been gained in contesting Tesack's motion for it would have been obliged to try the case against Truglio in any event.

Nor do we find any problem in the district judge permitting the transcript of the guilty plea hearing to be received by the jury. It had the bulk of the information in the transcript from Truglio's testimony, to which Tesack made no objection. The court was merely making certain that the jury had the whole picture.

As we read *Harris,* we find that the language used clearly reveals what the Court meant when it said that the privilege "cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances"; and we, of course, know that it meant for us to do just exactly what it said. Tesack provoked the introduction of the statements by taking the stand; and although the statements were received as to the credibility of his co-defendant, Truglio, the jury was instructed again and again not to consider them with regard to Tesack. If in such a situation any part of the record so introduced actually ricocheted onto Tesack, it was he who opened the door despite the repeated warnings of the district judge that he would open up a Pandora's box. We submit that *Harris* controls such a situation and that under the anomalous facts here, it was not error to submit the transcript of the record to the jury.

II.

◼ Next Tesack argues that his motion to suppress the evidence seized in the warrantless search of the Dodge panel truck— the United States Post Office safe—must be suppressed. Our careful reading of the testimony reveals beyond question that this search was made to arrest Tesack. The officers recognized Tesack when he turned to avoid their roadblock and as they followed, he was not seen to leave the Dodge truck when it stalled. When the officers

ran up to the Dodge truck, one approached its front door and called: "Come out with your hands up." When Tesack did not come out, the officer looked into the front seat and, seeing no one, then ran to the rear of the truck to open its back door to see if he was in the back. Two other officers were there, and the door was opened. Tesack, unbeknowing to the officers, had fled; the 1200 pound post office safe was in plain view of the officers, and no search warrant was required. *Shorey v. Warden,* 401 F.2d 474 (4th Cir. 1968); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

### III.

■ Tesack also urges that his motion for a continuance should have been granted. It appears that Tesack's counsel on his motion to withdraw his guilty plea had been appointed to a prosecutive position in Pennsylvania and was unable to represent him further. On March 21, 1975, Thomas M. McCulloch was appointed to represent Tesack. About March 24th, he was given a transcript of the first trial that included the testimony of all of the Government witnesses save two, together with the briefs on appeal of the motion to withdraw his plea of guilty. On March 26 the court set the case for trial on April 16th. Counsel examined the transcript on March 27, went to the scene of the crime in Wierton, West Virginia, and on the 28th examined all of the Exhibits in the case. On April 3 counsel asked for a witness list and was furnished one on the 4th. While counsel had the transcript of the Government's six witnesses, he was unable to interview them in person. The motion for continuance was made on April 8th. The motion was heard on April 16th before the jury was selected. The district judge first inquired what defense counsel needed to do that was not already done. Counsel mentioned the need to interview a co-conspirator. It developed that he was in the courtroom under subpoena and could be made available. No other concrete needs were mentioned, but counsel expressed a desire to be better acquainted with the case and that he had not had but

27 days from the date of his appointment. The district judge offered the facilities of the court to secure anything counsel required, and the motion was denied. Mr. McCulloch is a former Assistant United States Attorney and was well qualified to represent Tesack. Our study of the record reveals his high qualifications, effective representation and devotion to his task in representing Tesack, and the court—as was expressed at the argument—appreciates his service in this regard. However, we find no merit in the motion for continuance.

### IV.

Tesack also noted seven other errors during the trial which he discusses together. They include various other claims which we find are not meritorious, and they are each denied.

Affirmed.