**UNITED STATES of America, Appellee,**

v.

**Shirlene WOOD, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Ronald McKinley LEE, Sr., Appellant.**

**Nos. 88–3032, 88–3033.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 2, 1989.

Decided July 21, 1989.

Richard K. Gilbert (Appointed by this Court), for appellant, Wood in No. 88–3032.

Mary E. Davis, Washington, D.C. (Appointed by this Court), for appellant, Lee in No. 88–3033.

Thomas E. Booth, Atty., Department of Justice, with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell and Judith E. Retchin, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before WALD, Chief Judge, MIKVA, Circuit Judge, and OBERDORFER, District Judge.*

Opinion for the Court filed by Judge OBERDORFER.

* The Honorable Louis F. Oberdorfer, of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

OBERDORFER, District Judge:

Defendants-appellants Shirlene Wood and Ronald Lee, tried along with a third defendant, Paula Wood, were convicted in January 1988 in a two-week drug conspiracy jury trial before U.S. District Judge June Green. Shirlene Wood was indicted on 13 counts of conspiracy to traffic in cocaine, heroin and phencyclidine ("PCP"), distribution of a controlled substance, possession of a controlled substance, possession with intent to distribute a controlled substance, and possession of an unregistered firearm. She pled guilty to all counts for which she was indicted except Count 1, the conspiracy count, on which she was subsequently convicted after trial. Ronald Lee was indicted on 11 counts of conspiracy to traffic in cocaine, heroin and PCP, distribution of a controlled substance, possession with intent to distribute a controlled substance, felon in possession of a firearm, and possession of an unregistered firearm. He was convicted on all counts for which he was indicted. Shirlene Wood received a combination of concurrent and consecutive sentences to a total of fourteen years' imprisonment and five years' supervised release: on the conspiracy count, ten years; on the distribution of a controlled substance and the possession with intent to distribute a controlled substance counts, ten years to run concurrently, plus five years of supervised release; on the violation of 18 U.S.C. § 3147 (penalty for an offense committed while on release), two years to run consecutively; and on the possession of an unregistered firearm counts, two years to run consecutively. Ronald Lee received a combination of concurrent and consecutive sentences to a total of seventeen years' imprisonment and five years' supervised release: on the conspiracy count, a distribution of a controlled substance count, and the felon in possession of a firearm count, fifteen years; on the remaining distribution of a controlled substance counts and the possession with intent to distribute a controlled substance counts, fifteen years to run concurrently, plus five years of supervised release; and on the possession of an unregistered firearm counts, two years to run consecutively. Paula Wood was acquitted on all counts.

At trial, the government's evidence against appellants consisted of Detective Norris' testimony, appellants' recorded conversations with Norris, and drugs, weapons and drug paraphernalia that were seized from the houses that appellants occupied. The evidence, viewed in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), showed that during the summer and fall of 1987 appellant Shirlene Wood repeatedly sold drugs to District of Columbia undercover detective Harvey Norris. Wood was usually accompanied by appellant Lee who drove her to the various locations where she engaged in drug transactions with Norris. Lee usually remained in the car while Wood transacted the sale. The evidence featured the testimony of police officers who arrested appellants at the Best Western Motel and a video tape of appellants during a drug sale shortly before their arrest.

Lee claims, among other things, that the trial court erred in denying his motion to suppress the evidence seized as a result of the search of his home. Wood claims that she was denied effective assistance of counsel by her trial counsel's failure to join or file a motion to suppress the seizure of evidence from Lee's home. In addition, Wood claims that the trial court erred in permitting the government to impeach her with her prior inconsistent statements made during plea-bargaining sessions with the government, and Lee claims that the trial court erred in denying his motion to sever once it permitted the government to impeach Wood with her prior inconsistent statements that directly implicated him. Lee further claims that there was insufficient evidence to sustain his conviction for conspiracy to traffic in drugs, and that the trial court improperly imposed cumulative punishment on him for the offenses of being a felon in possession of a firearm and possession of an unregistered firearm.

(1) We affirm the district court's denial of Lee's motion to suppress, and find therefore that Wood's claim of ineffective assistance of counsel must fail because she could not be prejudiced by any failure on the part of her trial counsel to challenge a legal search and seizure.

(2) Under the doctrine announced in *United States v. Hooper*, 432 F.2d 604 (D.C.Cir.1970), and in view of the concurrency of the sentences imposed upon Wood and the difficulty of the issue, we vacate her conspiracy conviction without determining the merits of her objection that the trial court erred in permitting the government to introduce for impeachment purposes prior inconsistent statements that she made during plea-bargaining sessions with prosecutors. We further vacate the conspiracy conviction of Lee, and find that it was not error to deny severance from Wood despite the admission for impeachment of prior inconsistent statements that directly implicated Lee.

(3) We further hold that the district court did not err in imposing cumulative punishment on Lee for the offenses of being a felon in possession of a firearm and possession of an unregistered firearm.

## I.

Prior to trial, Lee moved to suppress the evidence seized from his home at 1235 Morse Street, N.E., on the grounds that the affidavit in support of the search warrant did not demonstrate probable cause to believe that evidence would be located on the premises and that the officers who executed the affidavit violated the "knock and announce" provisions of 18 U.S.C. § 3109. Hearings were held on October 30 and November 19, 1987 before District Judge Thomas Flannery, and for reasons stated on the record from the bench on November 19, 1987 and by Order of November 20, 1987 Judge Flannery denied defendant's motion to suppress the evidence seized as a result of the search of his home. Lee raises the question on appeal of whether the district court erred in denying his motion to suppress.

## A.

■ The relevant facts were as follows: On August 25, 1987, Agent Grubbs applied for a search warrant for 1235 Morse Street, N.E. The affidavit in support of the application indicated, among other things, that Detective Norris had made repeated purchases of drugs from Wood, who had been accompanied on most occasions by Lee, that Lee resided at 1235 Morse Street and that Wood stayed with him there "from time to time," that on August 20, Wood and Lee instructed Norris to call them at the phone number listed for 1235 Morse Street in order to negotiate a sale of cocaine, and that agents observed Lee and Wood leave the house, deliver cocaine to Norris, and return to the house. On these facts the magistrate issued a warrant.

The first question is whether the magistrate had a substantial basis for concluding that probable cause existed. In making a probable cause determination, a magistrate must consider, given the totality of the circumstances set forth in the affidavit, whether there is a fair probability that evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983). Agent Grubbs' affidavit demonstrates that evidence was indeed presented to the magistrate that would create probable cause for him to issue a warrant. It is significant that Wood and Lee negotiated a drug sale with Norris by telephone from the 1235 Morse Street house, left the house together, sold cocaine to Norris, and then returned to the house together. Although appellant Lee contends that this information is insufficient to establish that there was a fair probability that contraband would be found at that address, courts have found otherwise in similar situations. For example, in *United States v. Valenzuela*, 596 F.2d 824, 828 (9th Cir.), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979), the Court found probable cause to search an alleged drug dealer's house where agents had previously observed him leave his house to sell drugs. We reach the same conclusion here.

B.

Appellant Lee also contends that the evidence seized during the search of his home should be suppressed because the officer conducting the search violated the "knock and announce" requirements of 18 U.S.C. § 3109. That statute provides:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance....

Lee argues that Agent Grubbs did not comply with § 3109 and does not qualify for the only accepted exceptions to that rule: a knock and announcement would not be a useless gesture and there were no exigent circumstances.

However, according to the uncontradicted testimony of Agent Grubbs of the Drug Enforcement Agency who executed the foregoing search warrant on August 26, 1987 at 2:55 P.M. at 1235 Morse Street:

> [Agent Grubbs] went to the front door and knocked on the door and announced, I yelled, that police officers with a search warrant were here, and knocked with the fatty part of my left hand.
>
> I put my ear close to the door because I wanted to hear what was, if there was any activity inside the house.
>
> I waited a brief period of time and did not hear anything on the inside of the house.
>
> I knocked again, and at that point I checked to see if the door was unlocked.
>
> ....
>
> ... I had to make a determination whether or not I was going to have to force open the door.
>
> So, before I did anything like that, I wanted to see if there was an easy way, and the easy way being if the door was open.
>
> ....
>
> The door knob was open and the door was unlocked.
>
> I opened up the door, and I stepped in, and I put my head in again, and again I announced, "Police officers with a search warrant."
>
> ....
>
> I heard nothing from inside of the house.
>
> At that point I entered the house, and I trotted up the stairs and, as I was going up the stairs, I announced, "Police. Police."
>
> ....
>
> ... There were two occupants of the House ... [inside].

Transcript ("Tr.") of Motions Hearing, Testimony of Preston L. Grubbs at 6–7 (November 19, 1987).

On cross-examination defendant Lee's counsel requested that Grubbs give a demonstration, saying to the court that counsel had "found it very difficult for people to articulate in words exactly what happened, and I would like to have the Agent demonstrate what he did out there that day." Tr. at 21. Thereupon Grubbs stepped down from the witness stand and demonstrated what he did. While the scenario of the demonstration in the transcript is not set out as a good playwright might describe "theatrical business," the transcript of the demonstration colloquies extends over four pages and conveys a picture of substantial, time consuming activity.

Moreover, the consistency of the direct and cross-examination attested to the credibility of the witness. With commendable candor, Agent Grubbs conceded that he did not recall the tone of voice he used. Nor could he remember or approximate how much time he waited before entering the door. Agent Grubbs nevertheless reiterated in rebuttal:

> I approached the door and banged on the door with the fatty part of my hand. I yelled, "Police with search warrant."
>
> ....
>
> At that point I listened close to the door because I wanted to listen to see if there was any kind of activity inside the door.
>
> I waited a period of time.
>
> ....
>
> [Hearing no activity inside] I knocked on the door again with the fatty part of my fist.

**932**

....

[After that] I opened up the door.

....

I knocked on the door again. I checked to see if the door was unlocked.

....

I opened up the door, the wooden door....

....

My testimony is that I knocked on the door with the fatty part of my hand.

I opened up the door.

I yelled, "Police with a search warrant."

I listened and I heard nothing.

I entered the door, and, now, when I entered the door, I was in the hallway to the house.

Tr. at 22–24. Agent Grubbs also testified that there were one or two dogs on the lefthand side of the house and other dogs in the area of the house when he went to the door, and that the dogs were barking while the officers were approaching and actually knocking on the door. Tr. at 31. An occupant of the house testified that he did not recall hearing dogs barking, but did not deny that there was barking or that he heard it. Tr. of Motions Hearing at 92, 97 (Nov. 19, 1987). Thus the text and the context of Grubbs' testimony and the demonstration reflect the passage of much more than an instant. They also attest to Grubbs' good faith effort to make himself heard so as to give the occupants a reasonable opportunity to respond without giving them an opportunity to abscond or destroy evidence.

Immediately upon completion of Agent Grubbs' rebuttal testimony, Judge Flannery focused the argument in an extended colloquy with counsel stating: "The [defendant's] first point is that the officers did not properly announce their authority and purpose." Tr. at 97. In the course of the argument, Judge Flannery in effect found that the agent "had knocked first," *id.*, that "[w]hen he first got to the premises, he knocked on the door," *id.* at 98, that "[h]e never testified he just walked in without knocking," *id.*, and that "he definitely announced—he said that he knocked on the

door," *id.* at 99. In responding to defendant's assertion (demonstrably unsupported) that Agent Grubbs testified that he just walked in without knocking, *id.* at 98, Judge Flannery stated, apparently from his notes:

He [Grubbs] went to 1235 and he knocked, "Police with a search warrant."

Knocked again, and then he checked. The door was unlocked....

He opened it and announced again.

And then he entered.

Tr. at 99. In another colloquy with counsel, Judge Flannery stated: "It is perfectly clear in my mind that before he entered that house he announced, he knocked and announced his authority and purpose." Tr. at 100. Finally at the conclusion of the argument Judge Flannery found that "[a]fter listening to the testimony ... Agent Grubbs properly did announce his authority and purpose prior to entering the premises 1235 Morse Street ... as set forth in the sworn testimony—The two witnesses called by the defendant testified they didn't hear any announcement, but I believe the agent, I accept his testimony, and, therefore, I deny the motion." Tr. at 104–05.

## C.

These facts considered, the validity of the search depends upon whether in the circumstances here Agent Grubbs may have been constructively refused admittance within the knock and announce statute so as to authorize his entry entirely on his own momentum. *United States v. Davis,* 617 F.2d 677, 695 (D.C.Cir.1979), *cert. denied,* 455 U.S. 967, 100 S.Ct. 1659, 64 L.Ed.2d 244 (1980), established that an officer may assume that he has been refused admittance and may forcibly enter a house if the occupant of the house does not respond to the officer's announcement within a reasonable period of time. The *Davis* Court ruled that the district court did not err in concluding that the police did not violate § 3109 when they forcibly entered a house after announcing their authority and purpose, observing lights on in the house, and waiting fifteen to thirty

seconds before entering. The time that § 3109 requires officers to wait before they may construe no response as a denial of admittance depends largely on factual determinations made by the trial court. *Id.; see also Masiello v. United States,* 317 F.2d 121, 122 (D.C.Cir.1963). Another panel of this Court has recently summarized our present Circuit position as follows: "In making such judgments [about whether officers have been refused admittance], courts employ a highly contextual analysis, examining all the circumstances of the case, to determine whether the record establishes the existence of a constructive refusal." *United States v. Bonner,* 874 F.2d 822 (D.C.Cir.1989).

Here the officers had a warrant based on extensive evidence that the premises to be searched were repeatedly used by suspects observed to be engaged in selling drugs. The inference was reasonable, indeed strong, that the premises contained a cache of drugs. Furthermore, the silence inside the house despite all of the commotion generated by the knocking, announcing, and barking dogs evidenced either that no one was present to admit the agents or that someone was present and was failing or refusing to do so. In either event the silence justified a reasonable officer to conclude that he was constructively refused admittance to the premises.

Moreover, Agent Grubbs did not merely knock and enter. As Judge Flannery found, he knocked twice while announcing "police with a warrant." Although authorized and equipped to batter down the door, he demonstrated his reasonableness by trying the door to see if it was unlocked. Finding that it was unlocked, he opened it, knocked again, and then entered. While the barking of the dogs was not an invitation to enter, the barking, the knocking, and the silence from within reasonably persuaded Agent Grubbs that whoever was in the house was not inclined to admit him.

Judge Flannery's findings, articulated in the course of the argument, in his ruling from the bench immediately upon the conclusion of the hearing, and in his approval and express adoption of the sworn testimony of Agent Grubbs, were amply supported by the evidence and reasonable inferences therefrom. The findings were appropriate to the occasion of a pre-trial suppression hearing and fully satisfy the trial judge's obligation to facilitate appellate review. In light of the testimony before the district court, and Judge Flannery's assessment of Agent Grubbs' testimony as credible, we affirm the district court's ruling that Agent Grubbs did not violate the requirements of § 3109.

## II.

Wood raises the question on appeal of whether she was denied the effective assistance of counsel by her trial counsel's failure to file or join a motion to suppress the seizure of evidence from his home. She argues that she was prejudiced by the admission of the evidence seized during this search, and that because her trial counsel failed to raise the issue of its inadmissibility before trial, she has been denied the effective assistance of counsel.

█ The government contends that Wood's claim is not properly before this court because she did not present it to the district court in a motion for a new trial. *See United States v. DeCoster,* 487 F.2d 1197, 1204–05 (D.C.Cir.1973). The law in this circuit is that a claim of ineffective assistance must be made in a motion for a new trial "when counsel changes prior to appeal and when there is still a reasonable opportunity to challenge a conviction in the District Court." *United States v. DeBango,* 780 F.2d 81, 86 (D.C.Cir.1986). Nevertheless, we need not determine whether Wood had such a reasonable opportunity because her claim must fail on its merits.

█ Wood cannot show that she was prejudiced by any possible ineffectiveness on the part of her trial counsel for failure to file or join a motion to suppress, since the evidence was properly seized. *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984), provides that to prevail on a claim of ineffectiveness of counsel, a defendant must show that there is a "reasonable probabili-

ty that, but for the counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." When the ineffectiveness claim concerns an attorney's failure to raise a Fourth Amendment issue, the defendant must show that the Fourth Amendment claim has merit and that there was a reasonable possibility that the verdict would have been different absent the excludable evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2582–83, 91 L.Ed.2d 305 (1986). Wood's claim fails because she could not be prejudiced by any failure on the part of her trial counsel to challenge a *legal* search and seizure.

### III.

### A.

Wood further contends that the trial court erred in permitting the government to impeach her with her prior inconsistent statements made during plea-bargaining sessions. Wood's claim requires examination of the pretrial contacts between the defendant and the prosecutor here. The evidence reveals the following: In November of 1987, two months before trial, Wood, through her counsel, requested a meeting with the prosecutor to discuss the case against her. On November 24, the prosecutor sent Wood's counsel a letter stating that she would be willing to meet with Wood, but that she wanted Wood and her counsel's agreement to several "ground rules" for any " 'off-the-record' proffer or discussion." One of the ground rules stated in the letter was that "in the event your client is a witness at the trial ... and offers testimony materially different from any statements made or other information provided during the 'off-the-record' proffer or discussion, the attorney for the government may cross-examine your client concerning any statements made or other information provided...." Wood and her attorney signed the letter and, that same day, met with the prosecutor, Agent Grubbs and Detective Norris. They also met twice in December with the two inves-

tigators only. According to the investigators, during those meetings, Wood told them that she had been a small scale drug distributor until Lee had been released from jail, that thereafter Lee introduced her to his contacts, enabling her to buy better and more drugs, and that Lee was the "boss"—the one with the contacts. Tr. VII at 35–37, 51–53.

At trial, during the government's case-in-chief, the prosecutor informed the court that if Wood were to testify and attempt to exculpate Lee, the prosecutor would seek to impeach Wood with her prior inconsistent statements to the investigators. Lee objected and moved for a severance on the ground that the prosecutor's proposed impeachment would prejudice him. Judge Green reserved ruling until Wood testified. Tr. V at 72–81. During presentation of the government case against Paula Wood, the prosecutor again discussed with the court her intention to impeach Shirlene Wood with her prior statements if Wood were to testify and attempt to exculpate Lee. Lee again moved for a severance, arguing that such impeachment testimony would be prejudicial to him. Judge Green barred the prosecutor from impeaching Wood with her prior statements because Lee would be unduly prejudiced. Tr. VI at 5–12.

Wood then testified. On direct examination, she admitted that she was a drug dealer and that she had sold drugs to Norris on the dates alleged in the indictment, but she denied conspiring with anyone, testifying that Lee was "just a man I spent some time with." Tr. VI at 52. The prosecutor then asked the court to reconsider its earlier ruling or, in the alternative, to strike Wood's testimony about Lee. Judge Green let the testimony stand as presented, and declined to reconsider her previous ruling barring the impeachment of Wood with her prior statements. Tr. VI at 83–95.

Lee elected not to cross-examine Wood. During cross-examination by the prosecutor, Wood repeatedly testified that Lee was not involved in the drug business. Tr. VI at 132–37. During redirect-examination, answering her attorney's question of whether she was lying to protect her sister,

Wood testified that her sister was innocent, that Lee was innocent, and that Lee "never, ever had knowledge of anything that I was doing.... This is my business.... There is no conspiracy between us." Tr. VI at 175–77.

Following this testimony, the prosecutor urged the judge to allow her to impeach Wood with her prior statements and to give the jury a limiting instruction that prior statements should be considered solely to assess Wood's credibility. The judge ruled initially that she would "stick with the ruling." Then, after the prosecutor requested to be allowed to "ask her about the fact that she has gotten better prices and better quality since Ronald Lee got out of jail," the judge allowed that question. Tr. VI at 177–82.

On recross-examination, Wood denied that Lee introduced her to sources who would help her get better priced and better quality drugs. She also denied having said anything to the contrary to Agent Grubbs and Detectives Norris during the pretrial meetings. Wood admitted only that Lee had "introduced her to some friends of his." Tr. VI at 189. Lee then renewed his objection to the impeachment material and moved for a mistrial. The judge denied the motion. Tr. VI at 191–92.

The government then called Agent Grubbs as a rebuttal witness. He testified that, several weeks after Wood's arrest, he and Detective Norris met with Wood and her attorney, and Wood told them that she had been a small scale drug distributor until Lee got out of jail and enabled her to obtain better and more drugs. The district judge instructed the jury that Agent Grubbs' testimony had been admitted at that time "simply in the nature of impeachment of Ms. Shirlene Wood and is not to be considered against Mr. Lee." Tr. VII at 35–39. The government then recalled Detective Norris, who testified that Wood had told him and Agent Grubbs that after Lee got out of prison, she was better able, through Lee's drug contacts, to deal drugs in larger amounts and better quality. The district judge again instructed the jury that the testimony was being presented "solely for your consideration in whether or not Ms. Shirlene Wood has been impeached in any way in her testimony and it shall not be considered as against defendant Lee." Tr. VII at 52–55.

During her rebuttal argument, the prosecutor told the jury that although Wood testified that Lee had nothing to do with facilitating her drug connections, Agent Grubbs and Detective Norris testified that she told them otherwise. The district judge overruled Wood and Lee's objections to the prosecutor's argument, stating that the prosecutor is "talking about the believability or lack of [believability] of Ms. Shirlene Wood's testimony." Tr. VIII at 107–08. In its final charge, the district court instructed the jury, *inter alia*, that a witness' prior inconsistent statement is to be considered solely to test the witness' credibility and not as substantive evidence, Tr. VIII at 119–20, that evidence admitted against one defendant is not to be considered against another defendant, Tr. VIII at 122, and that the jury must consider the case of each defendant separately, Tr. VIII at 166–67.

■ Appellant Wood now argues that her pretrial meetings with the prosecutor and the investigators were plea bargaining sessions, and that Fed.R.Evid. 410 and Fed. R.Crim.P. 11(e)(6)[1] both prohibit the use against a criminal defendant of statements made during plea discussions, subject to two exceptions not operative here: to clari-

---

1. These rules provide, in relevant part, that
   ... evidence of the following is not ... admissible against the defendant who made the plea or was a participant in the plea discussion: ... any statement made during the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty....
   However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea or plea discussion has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record and in the presence of counsel.

fy another statement made in the same plea bargain or in a prosecution for perjury. Wood did not make this argument to the trial court, but now argues that because plain error occured, she should prevail on appeal. Wood argues that she was prejudiced by admission of the statements. At trial she vigorously denied her involvement with a drug conspiracy, while she admitted her involvement in drug distribution. She argues that, but for the admission of her prior statements, the jury might well have believed her contention that she was not a party to any conspiracy and that there was none. The government counters that it is not clear that the discussions with the prosecutor and the investigators prior to trial were plea discussions within the meaning of Fed.R.Evid. 410 or Fed.R. Crim.P. 11(e)(6). The letter from the prosecutor to Wood and her attorney characterizes the meeting as an " 'off-the-record' proffer or discussion." The letter also, however, includes a reference to "the procedures which will be followed as we continue our negotiations concerning the possible disposition of the above-captioned case." We believe that Wood and the government were in fact engaged in plea bargaining negotiations, and that this reference indicates that the government perceived the discussion to be part of their efforts to dispose of the matter—through extraction of information from Wood and, possibly, a plea.

■ The government argues in the alternative that even if these meetings were plea-bargaining sessions, the use that the prosecutor made of the statements was appropriate. The government urges that there is a split in the circuit courts with regard to whether a prosecutor can impeach a defendant testifying at trial with statements made during plea discussions. While the Second Circuit has concluded that use of such statements for impeachment is barred, *United States v. Lawson*, 683 F.2d 688, 690–93 (2d Cir.1982), the Eighth Circuit, *United States v. Gleason*, 766 F.2d 1239, 1245–46 (8th Cir.), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 801, 88 L.Ed. 2d 777 (1986), and the Fourth Circuit, *United States v. Tesack*, 538 F.2d 1068 (4th Cir.), *cert. denied*, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976), have concluded that use for impeachment is permissible.

Neither *Tesack* nor *Gleason*, however, lend support to the government's argument. In *Gleason*, the Eighth Circuit found that the trial court correctly refused to limit potential cross-examination of a defendant who pled guilty (but later withdrew it), and made certain statements under oath when she pled. The issue was whether the court erred in not limiting in advance the government's cross-examination of the defendant (if she took the stand at trial) about information she had given in her prior sworn statement and, if she gave conflicting testimony, seeking a perjury indictment against her. The defendant claimed that the trial court's ruling had allowed the government to make a threat of a perjury prosecution against her and had thereby prevented her from testifying. The *Gleason* court noted that Fed.R.Crim. P. 11(e)(6)(D)(ii) and Fed.R.Evid. 410 allow an exception to the general rule of inadmissibility—that a statement made during a guilty plea, later withdrawn, is admissible "in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel." *United States v. Gleason*, 766 F.2d at 1245 n. 8. That ruling contemplates use of the statement in a perjury prosecution, a different situation than the one presented here.

In *Tesack*, the Fourth Circuit found that the trial court correctly admitted into evidence against the codefendant alone, and for impeachment purposes only, the transcript of a hearing at which the defendant entered a guilty plea, later withdrawn. That court assessed the totality of the evidence before the jury and reasoned that there was enough other evidence of defendant's guilt so that even if the ruling were in error, it was harmless. *Tesack*, however, argued in November 1975, prior to the effective date of the Federal Rules of Evidence, makes no reference to the Rules, or to the clear history of Fed.R.Evid. 410 and Fed.R.Crim.P. 11(e)(6). In considering these rules, Congress had debated and re-

jected proposals that statements made in connection with an offer to plead guilty be available for impeachment purposes. *See* H.Conf.Rep. No. 414, 94th Cong., 1st Sess. 10 (July 28, 1975), *reprinted in* 1975 U.S. Code Cong. & Admin.News 674, 713, 714; H.Conf.Rep. No. 1597, 93d Cong., 2d Sess. 1 (December 14, 1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News 7051, 7098, 7100. *See also* Wright and Graham, 23 *Federal Practice and Procedure: Evidence,* § 5349 at 416, notes 48–54 and accompanying text (1980). Therefore, the *Tesack* court's statements with regard to impeachment evidence must be discounted here. Thus, unless the correspondence between the prosecutor and Wood and her counsel effected a waiver of her rights under the Rules, the statement here was inadmissible.

■ On the waiver issue, the government argues that defendant Wood waived any rights she might have under Fed.R. Evid. 410 and Fed.R.Crim.P. 11(e)(6) when she, along with her attorney, signed the prosecutor's letter warning her that her statements in the bargaining process could be used at trial to cross-examine her. The waiver claim raises a difficult question which this circuit has not previously addressed. However, in the circumstances here we need not resolve this issue or the other serious questions about the use of Wood's statement in the course of the plea bargain. Instead, in view of the concurrency of the sentences and under the doctrine announced in *United States v. Hooper, supra* at p. 929, we choose to vacate Wood's conspiracy conviction without determining the merits of her objection that the trial court erred in permitting the government to impeach her with her prior inconsistent statements made during plea-bargaining sessions and the government's argument that Wood has waived any rights she might have to exclude those statements. However, we take this occasion to recall for government prosecutors Justice Jackson's wise warning of forty-odd years ago: "It is very well to say that those who deal with the Government should turn square corners. But there is no reason why the square corners should constitute a one-way

street." *Federal Crop Insurance Corporation v. Merrill,* 332 U.S. 380, 387–88, 68 S.Ct. 1, 4–5, 92 L.Ed. 10 (1947).

### B.

■ Appellant Lee argues that the district court erred in denying his motion to sever once it permitted the government to impeach Wood with prior inconsistent statements that directly implicated Lee. The standard of review for a district court's decision to deny a motion for severance is abuse of discretion. *United States v. Tarantino,* 846 F.2d 1384, 1398 (D.C. Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 108, 102 L.Ed.2d 83 (1988); *United States v. Hernandez,* 780 F.2d 113, 119 (D.C.Cir. 1986). The *Hernandez* court stated that

[t]he critical determination in evaluating a motion to sever the case of two or more co-defendants is whether a jury could reasonably compartmentalize the evidence introduced against each individual defendant.... The danger that the jury will inappropriately apply evidence against one defendant against a co-defendant is deemed to be particularly great if there is a gross disparity of the quantity and quality of evidence against the two accused.

*Hernandez,* 780 F.2d at 119; *see also United States v. Sampol,* 636 F.2d 621, 647 (D.C.Cir.1980). *United States v. Butler,* 822 F.2d 1191 (D.C.Cir.1987) provides that

[t]he trial judge is given great latitude to balance the institutional benefits that joint trials confer by preserving judicial and prosecutorial resources against the possibility that a defendant will be erroneously convicted because the cumulation of the evidence against all the defendants may lead the jury to be either confused or prejudiced in assessing the evidence against the particular defendant. Instructions to the jury to consider the evidence separately against each defendant ... provide significant safeguards against the dangers of prejudice.

*Butler,* 822 F.2d at 1194 (citations omitted).

■ Although the government's use of impeachment testimony against Wood di-

rectly implicated Lee, the relevant question for purposes of severance is whether the testimony was so prejudicial that the jury was unable to compartmentalize the evidence. In this case, roughly the same quantity and quality of evidence was presented against both Wood and Lee. They arrived at the scenes of the drug transactions together and left together, often to return to Lee's home where they stayed together. In addition, Wood referred to Lee in her discussions about the drug business with undercover detective Norris, Lee's fingerprints were found on a jar containing narcotics, and Lee served as a lookout in the drug transaction at the Best Western Motel on the day of Wood's and Lee's arrest. Moreover, the district judge specifically concluded that the prosecutor referred to Wood's prior statements only to attack Wood's credibility, not as evidence against Lee, and the district judge instructed the jury that Wood's prior statements had been admitted solely to assess Wood's credibility. We give deference on appeal to a trial court's reasonable interpretation of counsel's remarks. *See, e.g., United States v. Robinson,* 485 U.S. 25, 108 S.Ct. 864, 868, 99 L.Ed.2d 23 (1988).[2] For these reasons and under the principles set forth by this court in *Hernandez* and *Butler,* we find that Lee's contention falls short of demonstrating any abuse of discretion by the district court in denying his motion to sever.

### IV.

▆▆▆ Lee claims additionally that there was insufficient evidence to sustain his conviction for conspiracy to traffic in drugs. Regardless of whether the impeachment testimony should have been admitted, however, the evidence presented to the jury was sufficient to establish the existence of a conspiracy between Wood and Lee. That evidence included Wood's and Lee's indications to Norris that they were working together and that Lee was going to do business with Norris in the future, Lee's fingerprint on a glass jar that contained

PCP, Wood's staying at Lee's house, Lee's presence during most of Wood's drug sales to Norris, and Lee's acting as a lookout and his attempt to pick up the money for the PCP at the Best Western Motel on the night of Wood's and Lee's arrest.

▆▆▆ Appellant Lee claims that the evidence of the conspiracy was circumstantial and that what was missing from the government's cases was evidence that Lee agreed with anyone to commit the offenses and knowingly participated in the conspiracy. However, circumstantial evidence is as pertinent as direct evidence to the establishment of guilt or innocence in a criminal case. *See United States v. Gates,* 807 F.2d 1075, 1080 (D.C.Cir.1986), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 204 (1987). Especially in conspiracy cases, it is unusual to have direct evidence of the conspiracy. Circumstantial evidence, including inferences from a " 'development and a collocation of circumstances,' " suffices to prove participation in a conspiracy. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) (citation omitted); *see also United States v. Treadwell,* 760 F.2d 327, 333 (D.C.Cir.1985), *cert. denied,* 474 U.S. 1064, 106 S.Ct. 814, 88 L.Ed.2d 788 (1986).

▆▆▆ Nevertheless, Paula Wood having been acquitted and the conspiracy charge against Shirlene Wood having been vacated pursuant to the *Hooper* doctrine, we apply the teaching of that case to vacate the conspiracy conviction of Lee. Like Wood, he is serving concurrent sentences that fully account for all of the time that he has been sentenced to serve. There is, as demonstrated below, ample evidence to sustain Lee's conviction on the remaining counts.

### V.

▆▆▆ Finally, appellant Lee argues that his convictions for the two statutory offenses of felon in possession of a firearm, 18 U.S.C. § 992(g), and possession of an unregistered firearm, D.C.Code § 6–2311(a), were one continuous offense

---

**2.** Obviously, Wood's statement would have been less harmful to Lee if his name had been redact-

ed from it. *See Kramer v. United States,* 317 F.2d 114 (D.C.Cir.1963).

and the second is a lesser included offense of the first, so that the convictions for possession of an unregistered firearm must be vacated on merger grounds and the case remanded for resentencing. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), however, established that "where the same act ... constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Id.* at 304, 52 S.Ct. at 182. 18 U.S.C. § 922(g)(1) provides that it is unlawful for any person

> (1) who has been convicted in any court of ... a crime punishable by imprisonment for a term exceeding one year ... to possess in or affecting commerce, any firearm or ammunition....

D.C.Code § 6-2311 provides that

> ... no person or organization shall, within the District possess or have under his or its control any firearm, unless such person or organization is the holder of a valid registration certificate for such firearm.

18 U.S.C. § 922(g)(1) requires proof that the person possesses a firearm and that he is a felon. D.C.Code § 6-2311 requires proof that the person possesses a firearm and that he does not have a valid registration certificate. Under the *Blockburger* standard, which this circuit has applied, these statutes define separate offenses. *See United States v. Anderson,* 851 F.2d 384, 390-92 (D.C.Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 801, 102 L.Ed.2d 792 (1989). Thus the trial judge did not err in imposing cumulative punishment on Lee.

### VI.

We affirm the conviction of defendant Lee for distribution of a controlled substance, possession with intent to distribute a controlled substance, felon in possession of a firearm, and possession of an unregistered firearm, and we vacate, under the procedure adopted by this circuit in *United States v. Hooper,* the conviction of Wood and Lee for conspiracy to traffic in cocaine,

heroin and PCP, without resolving the merits of Wood's challenge to the admission of her prior statements made during plea-bargaining sessions with the government.

*It is so ordered.*