979 F.2d 248
 298 U.S.App.D.C. 309
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America,
v.
Stanley W. BEATTY, Appellant.
 No. 91-3117.
 United States Court of Appeals, District of Columbia Circuit.
 Nov. 10, 1992.
 
 Before WALD, SENTELLE and RANDOLPH, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on appeal of the defendant from the judgment of the District Court, and it was briefed and argued by counsel. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED and ADJUDGED, by the Court, that in No. 91-3117, the judgment is affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely-filed petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 Stanley Beatty appeals his conviction for possession with intent to distribute more than 50 grams of cocaine in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(A)(iii) and with the use of a firearm in relation to drug trafficking in violation of 18 U.S.C. § 924(c). Specifically, he argues that: the district court's denial of his suppression motion was incorrect because the knock and announce requirements were not met; the evidence of his guilt was insufficient; the district court's use of a general instruction on unanimity rather than a specific jury instruction or a special verdict form rendered the verdict constitutionally impermissible; the district court's precautionary actions after an improper juror contact were insufficient; and a statement by the trial judge to the jury that a juror had been threatened warranted the granting of a mistrial. Because we find none of these arguments persuasive, we affirm the conviction.
 
 I. BACKGROUND
 
 5
 On August 23, 1990, police officers executed a search warrant at a home on First Street, N.W., Washington, D.C., where Mr. Beatty lived. An officer knocked on a basement door and announced, "[P]olice, we have a search warrant." Transcript ("Tr.") I at 88. The officer received no response but could hear the sound of a television from within the basement, and after ten to fifteen seconds had passed, the officer tried the door and found it unlocked. Id. at 88, 90. Once inside, the police found Mr. Beatty lying on a bed. Id. The police recovered a loaded .357 revolver and a loaded .22 revolver from under the mattress Mr. Beatty was lying on, a loaded .38 revolver and a loaded .380 automatic in a hole in the ceiling directly over the basement door, and a loaded .22 rifle in plain view across from Mr. Beatty's bed. Id. at 97-98, 106-08. Also found in the bedroom was a shoebox filled with ammunition and a triple-beam scale, and under the basement stairs, another triple-beam scale. Id. at 104-06. In an adjacent washroom, the police discovered a safe which was pried open and found to contain over 124 grams of cocaine. Tr. II at 4-7, 25, 146, 149. A second team of officers, which had subsequently entered through the first floor, recovered a brown bag containing 43 small plastic bags filled with a total of 11.45 grams of cocaine from under a bed in a second-floor room. Id. at 60, 67-68, 146. Mr. Beatty, together with a Mr. Eric Hicks, who was encountered by police on the second floor, were arrested, and a search of Mr. Hicks produced $2300 in cash and a ziplock bag containing .218 grams of cocaine.
 
 
 6
 Mr. Beatty and Mr. Hicks were jointly charged in a two-count superseding indictment with possession with intent to distribute more than 50 grams of cocaine, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(A)(iii), and with the use of a firearm in relation to drug trafficking, in violation of 18 U.S.C. § 924(c). The district court denied, without comment, a defense motion to suppress evidence on the ground that the police allegedly failed to comply with the "knock and announce" requirements of 18 U.S.C. § 3109. Tr. I at 91. At trial, a police detective testified as an expert witness and stated that the large quantity of cocaine, the triple-beam scales and the weapons were consistent with a drug trafficking operation. Tr. II at 170-74. For the defense, there was testimony to show that six other people lived in the house and that persons besides Mr. Beatty sometimes frequented the basement. Id. at 214, 216, 225-26, 236, 239, 240. During a trial recess, one of the jurors was approached by a person in the hall who said, "He didn't do it." Tr. II at 97-98. That juror was replaced by an alternate before the jury was instructed. Tr. III at 42. The jury acquitted co-defendant Mr. Hicks of both charges but found Mr. Beatty guilty as charged. The district court sentenced Mr. Beatty to consecutive terms of 121 months for the narcotics offense and 60 months for the firearm offense.
 
 II. DISCUSSION
 A. Suppression Motion
 
 7
 Section 3109 of Title 18, United States Code, provides that: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance...." Mr. Beatty argues that the police violated § 3109 by entering the house before waiting a sufficient period of time. It is well established that "an officer may assume that he has been refused admittance and may forcibly enter a house if the occupant of the house does not respond to the officer's announcement within a reasonable period of time." United States v. Wood, 879 F.2d 927, 932 (D.C.Cir.1989); see also United States v. Bonner, 874 F.2d 822, 824 (D.C.Cir.1989) (statute "encompasses circumstances that constitute constructive or reasonably inferred refusal"). The amount of time that is reasonable is highly dependent upon the particular facts and circumstances in a case. See Bonner, 874 F.2d at 824.
 
 
 8
 The police heard the noise of a television "blasting" from Mr. Beatty's bedroom, Tr. I at 88, and were entitled to "resolve the ambiguity of a noise from within the place to be searched in a manner consistent with executing the warrant safely and successfully." Bonner, 874 F.2d at 825. This noise at least supplied the police with information that someone was inside the basement. Coupled with the fact that the police were searching for easily-disposable drugs and powerful weapons and more importantly, that 10 to 15 seconds passed without a response, the district court could reasonably have found that the police were justified in concluding that the occupants had constructively refused to answer the door. In United States v. Davis, this court held that a forcible entry into a house after the police had announced their authority and purpose, observed lights on in the house and waited 15 to 30 seconds before entering was not a violation of § 3109. 617 F.2d 677, 695 (D.C.Cir.1979), cert. denied, 445 U.S. 967 (1980). Further, it is worth noting that after waiting a reasonable period of time, the police did not break the door down but found it open and entered, see Wood, 879 F.2d at 933 (fact that police officer tried the door and found it unlocked, rather than immediately battering the door down, added to reasonableness of police entry), announcing their presence, in Mr. Beatty's words, "loud and clear," Tr. I at 86.
 
 B. Sufficiency of Evidence
 
 9
 In reviewing the sufficiency of the evidence to convict Mr. Beatty of the narcotics and firearm offenses, this court must "view the evidence in the light most favorable to the government, allowing the government the benefit of all reasonable inferences that may be drawn from the evidence, and permitting the jury to determine the weight and credibility of the evidence." United States v. Sutton, 801 F.2d 1346, 1358 (D.C.Cir.1986). If " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,' " this court must affirm the conviction. United States v. Long, 905 F.2d 1572, 1577 (D.C.Cir.) (quoting Jackson v. Virginia, 443 U.S. 307, 309 (1979)), cert. denied, 111 S.Ct. 365 (1990). Judged against this demanding standard, see United States v. Maxwell, 920 F.2d 1028, 1035 (D.C.Cir.1990), it is clear that the evidence was sufficient.
 
 
 10
 First, with regard to the narcotics offense, the government produced evidence to show that Mr. Beatty had constructive possession of the drugs, that is, the ability to exercise knowing "dominion and control" over them. See United States v. Hernandez, 780 F.2d 113, 116 (D.C.Cir.1986). Not only were the narcotics found in Mr. Beatty's home, see United States v. Jenkins, 928 F.2d 1175, 1179 (D.C.Cir.1991) (jury entitled to infer that person exercises constructive possession over items found in his home), but the vast bulk of the cocaine was found in the basement where Mr. Beatty lives. The fact that others shared the premises and that the drugs were hidden in a basement safe and in a bedroom, did not negate the inference that Mr. Beatty had dominion and control over the cocaine. Id. at 1179; see also United States v. Staten, 581 F.2d 878, 884 (D.C.Cir.1978). Ample evidence also existed from which the jury could infer an intent to distribute. The presence of large amounts of cocaine in the house, two triple-beam scales and zip-lock bags evinced such an intent. See United States v. Davis, 562 F.2d 681, 685 (D.C.Cir.1977) (intent shown by large quantity of drugs, drugs packaged for sale, paraphernalia, and scales, one which was found "on the coffee table immediately next to the place where [defendant] was arrested, and another ... on a shelf in the same room"); see also United States v. Dunn, 846 F.2d 761, 764 (D.C.Cir.1988). Finally, the presence of five loaded weapons in Mr. Beatty's room, which an expert testified was consistent with a drug trafficking operation, Tr. II at 171, 174, provided further evidence of Mr. Beatty's intent to distribute cocaine. See United States v. Bruce, 939 F.2d 1053, 1056 n. 2 (D.C.Cir.1991).
 
 
 11
 Second, the evidence was also sufficient to support his conviction for using or carrying a gun in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c). This court recently identified a number of factors that assist in determining when § 924(c) has been violated: constructive possession of a gun; accessibility of the gun to the defendant; the proximity of the gun to the drugs in a trafficking operation; whether the gun is loaded; the number and type of guns; expert testimony regarding the relation of weapons to drug trafficking; and a defendant's recent use of the gun in relation to drug trafficking. See United States v. Morris, No. 91-3151, 1992 WL 276535, at * 4-* 6 (D.C.Cir. Oct. 9, 1992). With the exception of the final point, ample evidence supports every one of these factors and therefore a reasonable juror surely could have inferred that Mr. Beatty used the guns in connection with the possession with intent to distribute offense. See also United States v. Anderson, 881 F.2d 1128, 1141 (D.C.Cir.1989) (section 924(c) conviction supported by evidence that included "the proximity of the guns to the drugs and drug paraphernalia, the presence of loaded guns and ammunition, and expert testimony that guns are often found in 'crack houses' to protect drug traffickers and their investment").
 
 C. General Instruction
 
 12
 Mr. Beatty argued before the district court, to no avail, that without a specific jury instruction or a special verdict form, the jurors might not agree unanimously about which of the three stashes of cocaine or which of the five firearms he possessed. He argues to this court that the lower court's use of a general instruction therefore rendered the resulting verdict constitutionally impermissible. A general instruction to the jury on unanimity is appropriate unless there is "a genuine risk that the jury is confused or that a conviction may occur as the result of different jurors concluding that a defendant committed different acts." United States v. Duncan, 850 F.2d 1104, 1114 (6th Cir.1988). Such a risk did not exist with respect to the narcotics charge. The police found 124 grams of cocaine in Beatty's room, 11.45 grams in an upstairs bedroom, and .218 grams in a co-defendant's shoe. Beatty was indicted for possession with intent to distribute 50 grams or more of cocaine and the judge instructed the jury three times that the government was required to prove that the defendant possessed at least this amount. See Tr. III at 67 ("I want to make it clear that the charge in the indictment ... required the government to prove beyond a reasonable doubt that the amount of the controlled substance was 50 grams or more"); id. at 58; id. at 59. The verdict form similarly required the jury to find that Beatty possessed over 50 grams. See Appellee's Brief at Appendix D. Since the cocaine in Beatty's bedroom was the only stash greater than 50 grams, the jury must have agreed that he possessed this amount in order to find him guilty of the narcotics offense. It is highly implausible that any juror became confused and convicted Beatty of possessing over 50 grams but only believed he possessed the drugs in the upstairs bedroom or the co-defendant's shoe which together amounted to less than 12 grams.
 
 
 13
 Likewise, the weapons charge did not require a specific jury instruction. Because the evidence was essentially the same as to each weapon and the evidence as a whole was sufficient to demonstrate constructive possession of each of the guns, it is highly unlikely that a juror would believe that one or more of the weapons was not possessed by Beatty. See United States v. North, 920 F.2d 940, 951 (D.C.Cir.1990) (" 'The evidence was identical as to all five documents ... [t]hus, the jury was restricted to one course of events.' ") (quoting Independent Counsel's petition for rehearing), cert. denied, 111 S.Ct. 2235 (1991). Moreover, the verdict form required the jury to find unanimously that "Beatty did knowingly use and carry a firearm, that is a .357 magnum revolver, a .22 caliber rifle, a .38 caliber revolver, a .380 automatic pistol and a .22 calibre revolver during and in relation to drug trafficking." See Appellee's Brief at Appendix D (emphasis added). While there is some ambiguity because of the singular "a firearm," the form did envision the jury finding Mr. Beatty guilty of possessing all the weapons.
 
 D. Juror Contact
 
 14
 After the juror, Ms. McKenzie, was contacted, the trial judge inquired into the place, time and content of the contact:
 
 
 15
 Court: It was out in the hall here; wasn't it?
 
 
 16
 Juror: Yes, sir. There were two others that--
 
 
 17
 Court: What did they say to you?
 
 
 18
 Juror: Something to the effect that "he didn't do it"...
 
 
 19
 Court: You don't know to whom that referred?
 
 
 20
 Juror: No, sir.
 
 
 21
 Tr. II at 97-98. Defense counsel interpreted the words "two others" as referring to two jurors and requested that those jurors be identified and questioned on the contact. Id. at 98. The judge did not do so and instead instructed the entire jury:
 
 
 22
 One of your number disclosed to us that a couple of people during the recess tried to approach her about the case, and she very properly turned to the side and didn't talk to them, and I understand these same people may have approached one or more other people.
 
 
 23
 I want to advise you that, of course, any contact is improper, and you are not to talk to them.
 
 
 24
 Id. at 99. Mr. Beatty complains that the precautions taken by the judge were insufficient.
 
 
 25
 A judge's inquiry into an improper jury contact "need only be sufficiently detailed to permit the judge to determine whether any prejudice is likely to result." United States v. Butler, 822 F.2d 1191, 1196 (D.C.Cir.1987). "[T]he trial judge has broad discretion to fix the exact procedures by balancing the need to make a sufficient inquiry against the concern that the inquiry not create prejudicial effects by unduly magnifying the importance of an insignificant occurrence." Id. Flexibility must be the rule because "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." Smith v. Phillips, 455 U.S. 209, 217 (1982). The Supreme Court has advised that a court "should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." Remmer v. United States, 347 U.S. 227, 230 (1954). This court has advised that a judge consider "the nature of the communication, the length of the contact, the possibility of removing juror taint by a limiting instruction, and the impact of the communication on both the juror involved and the rest of the jury." United States v. Williams, 822 F.2d 1174, 1188-89 (D.C.Cir.1987). In the present case, the district court took the first three steps, but Mr. Beatty complains that on the fourth, the district court made its assessment without expressly interviewing the jurors.
 
 
 26
 It was entirely reasonable for the court to conclude that in light of the nature and length of the contact and the court's admonition to the jury, the contact was harmless and did not require such interviews. The court could have decided that "[t]he nature of the contact was relatively innocuous; it did not provide the juror with any crucial extra-judicial information, and it did not constitute an attempt to bribe or intimidate the juror, which is the kind of contact that clearly could, in and of itself, prejudice the juror." See Butler, 822 F.2d at 1196. Moreover, the court may have felt that a protestation of innocence was more likely to help the defendants than to prejudice them. The decision on juror prejudice is properly vested in the trial court and it would be improper to require district judges to ask in every instance whether each juror may continue to deliberate impartially, especially considering that further "questioning on a juror contact could cause the jurors polled to attach undue significance to the incident." See Williams, 822 F.2d at 1189. Finally, the fact that the jury acquitted Beatty's co-defendant, who was tried on identical charges, suggests that the jury was not prejudiced by the contact which did not distinguish between the two defendants. See Bailey v. United States, 410 F.2d 1209, 1215 (10th Cir.), cert. denied, 396 U.S. 933 (1969).
 
 E. Judge's Misstatement to Jury
 
 27
 In dismissing the contacted juror, the trial court gave as its reason, before the jury in open court, that "a possible threat" had been made to the juror. Tr. III at 44. However, any prejudice was quickly cured when the judge immediately explained:
 
 
 28
 Ladies and gentlemen, I misspoke myself. We interviewed Ms. McKenzie yesterday. I don't know what the situation was. I think it was probably a mistake for me to characterize it as a threat. But we are removing her because of any embarrassment that she might suffer by sitting in this case.
 
 
 29
 Id. at 45-46. Moreover, the judge then repeatedly emphasized that the court's statements were not evidence and that the jury was to decide the case based on the evidence and testimony presented at trial. Id. at 46-50. Beatty has not offered any information to suggest that the jurors were improperly affected by the court's original statement or that the subsequent statements failed to cure any prejudice. And again, the fact that the co-defendant was acquitted when the jurors had no way of knowing on whose behalf the "threat" was made indicated "that the jury discounted this incident and performed its duty free from external pressure." See Bailey, 410 F.2d at 1215.
 
 III. CONCLUSION
 
 30
 Therefore, we conclude that: the district court's denial of Mr. Beatty's suppression motion was correct because the knock and announce requirements were met; the evidence was sufficient for a juror to rationally conclude that Mr. Beatty was guilty of both the drug and firearm offenses; the court's general instruction on unanimity was appropriate because there was no likelihood of juror confusion; the trial court's inquiry into a juror contact was reasonable; and a misstatement by the trial judge was cured by subsequent statements and therefore was not prejudicial. We affirm the conviction.